IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: | ETHICON, INC.<br>PELVIC REPAIR SYSTEMS<br>PRODUCT LIABILITY LITIGATION | MDL No. 2327 |

THIS DOCUMENT RELATES TO:

*Barbara Vignos-Ware, et al. v. Ethicon, Inc., et al.*   Civil Action No. 2:12-cv-00761

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Robert Hamilton, M.D.)

Pending before the court are the Motion to Limit the Opinions and Testimony of Dr. Robert Hamilton [ECF No. 109] and the Amended Motion to Limit the Opinions and Testimony of Dr. Robert Hamilton [ECF No. 113] filed by the plaintiffs. The Motion is now ripe for consideration because briefing is complete.

I.   Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 60,000 cases currently pending, approximately 28,000 of which are in this MDL, which involves defendants Johnson & Johnson and Ethicon, Inc. (collectively "Ethicon"), among others.

In this MDL, the court's tasks include "resolv[ing] pretrial issues in a timely and expeditious manner" and "resolv[ing] important evidentiary disputes." Barbara

J. Rothstein & Catherine R. Borden, Fed. Judicial Ctr., *Managing Multidistrict Litigation in Products Liability Cases* 3 (2011). To handle motions to exclude or to limit expert testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court developed a specific procedure. In Pretrial Order ("PTO") No. 217, the court instructed the parties to file general causation *Daubert* motions in the main MDL and specific causation *Daubert* motions, responses, and replies in the individual member cases. To the extent that an expert is both a general and specific causation expert, the parties were advised that that they could file a general causation motion in the main MDL 2327 and a specific causation motion in an individual member case. PTO No. 217, at 4.

## II. Legal Standard

By now, the parties should be intimately familiar with Rule 702 of the Federal Rules of Evidence and *Daubert*, so the court will not linger for long on these standards.

Expert testimony is admissible if the expert is qualified and if his or her expert testimony is reliable and relevant. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597. An expert may be qualified to offer expert testimony based on his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Reliability may turn on the consideration of several factors:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant

scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94). But these factors are neither necessary to nor determinative of reliability in all cases; the inquiry is flexible and puts "principles and methodology" above conclusions and outcomes. *Daubert*, 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 525 U.S. 137, 141, 150 (1999). Finally, and simply, relevance turns on whether the expert testimony relates to any issues in the case. *See, e.g., Daubert*, 509 U.S. at 591–92 (discussing relevance and helpfulness).

In the context of specific causation expert opinions, the Fourth Circuit has held that plaintiffs may use "a reliable differential diagnosis[, which] provides a valid foundation for an expert opinion." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999).

> A reliable differential diagnosis typically, though not invariably, is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests,' and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Id.* at 262 (citations omitted).

Defendants, however, need not conduct a differential diagnosis to identify the specific cause of an injury because they do not bear the burden of proving causation. *See* 3 David Faigman et al. *Modern Sci. Evidence* § 21:6 (2015-2016 ed.). Indeed, a defendant's specific causation expert's testimony should not be excluded because it fails to identify the specific cause of a plaintiff's injury. *See Yang v. Smith*, 728 S.E.2d

3

794, 800 (Ga. Ct. App. 2012) (refusing to exclude defendant's specific causation expert testimony where that testimony did not identify an injury's specific cause because the defendant had no burden to prove the specific cause of the injury). In lieu of conducting traditional differential diagnoses, defendants may instead provide expert testimony suggesting alternative causes for the plaintiff's injury in order to rebut the plaintiff's specific causation testimony. *See Westberry*, 178 F.3d at 265 ("The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' unless the expert can offer '*no* explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" (citations omitted)); *see also* Faigman, *supra*, at § 21:4 ("Sometimes, the courts subtly shift the burden of production onto the defendant when determining whether the [plaintiff's] expert has done a sufficient job in ruling out other causes.").

At bottom, the court has broad discretion to determine whether expert testimony should be admitted or excluded. *Cooper*, 259 F.3d at 200.

### III. Discussion

The plaintiffs argue that I should exclude Dr. Hamilton's opinions (1) on the safety or efficacy of mesh, (2) that Ms. Vignos-Ware's failure to use vaginal cream contributed to her complications, and (3) that a professional article touting midurethral synthetic mesh slings as particularly effective was reliable. They move to exclude this testimony because it is beyond the scope of what Ethicon indicated that Dr. Hamilton, as a non-retained treating physician witness, would testify.

4

Although parties need not disclose non-retained treating physicians where that physician intends to testify regarding "knowledge gained and opinions formed during the course of treatment," non-retained treating physicians do not have cart blanche to provide wide-ranging expert testimony. *In re C. R. Bard, Inc.*, 948 F. Supp. 2d 589, 615 (S.D. W. Va. 2013), *on reconsideration in part* (June 14, 2013). Where "treating physicians offer opinions formed outside the course of treatment," their testimony must be excluded. *Id.* at 616. Dr. Hamilton's broad testimony includes many general statements about the efficacy of mesh, the causation of Ms. Vignos-Ware's injury, and the reliability of professional articles praising the mesh product—testimony beyond the scope of his treatment of Ms. Vignos-Ware. To the extent the plaintiffs seek to exclude Dr. Hamilton's testimony beyond the scope of his treatment of Ms. Vignos-Ware, their Motion is **GRANTED**.

Dr. Hamilton may, of course, testify that Ms. Vignos-Ware was non-compliant for failing to use a prescribed cream because that addresses information inside the scope of treatment. The plaintiffs' Motion on this point is **DENIED**, and any remaining issues are **RESERVED** for trial.

### IV. Conclusion

The court **ORDERS** that the Amended Motion to Limit the Opinions and Testimony of Dr. Robert Hamilton [ECF No. 113] is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**. The court also **ORDERS** that the Motion to Limit the Opinions and Testimony of Dr. Robert Hamilton [ECF No. 109] is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    February 14, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE